UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE WILLIAMS,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No. 08-12435
　　　　　　　　　　　　　　　　　　　Honorable Patrick J. Duggan

MORGAN STANLEY & CO., INC.,
DAVID DARST, MICHAEL CHU, JOSEPH
MICHALAK, MATTHEW TURNBULL,
JOSEPH GIRARDIN, TAAL ASHMANN,
SAM FLAM, KATHLEEN FITZGERALD, and
RONALD BULTMAN,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 27, 2010.

PRESENT:　THE HONORABLE PATRICK J. DUGGAN
　　　　　　U.S. DISTRICT COURT JUDGE

On June 6, 2008, Plaintiff, a former Financial Advisor at Defendant Morgan Stanley & Co., Inc.'s office in Livonia, Michigan, initiated this action against Defendants. In her complaint, Plaintiff alleges numerous claims of race discrimination, hostile work environment, and retaliation under federal and state law and state law claims of breach of an express and implied contract, promissory estoppel, and intentional infliction of emotional distress. Plaintiff filed an amended complaint on October 20, 2008. Defendants are Morgan Stanley & Co., Inc. ("Morgan Stanley") and several Morgan

Stanley employees (collectively "Individual Defendants").

On March 24, 2009, this Court issued an opinion and order granting in part Defendants' motion to dismiss and disposing of some of Plaintiff's claims.[1] As a result of that decision, the following claims in Plaintiff's amended complaint remain pending:

(I-III) Title VII race discrimination, retaliation, and hostile work environment claims against Morgan Stanley;

(IV-VI) race discrimination, retaliation, and hostile work environment claims pursuant to 42 U.S.C. § 1981 against Morgan Stanley, Michael Chu, Joseph Michalak, Matthew Turnbull, Taal Ashman, and David Darst;

(VIII) a conspiracy claim pursuant to 42 U.S.C. § 1985 against all defendants;

(IX-XII) race discrimination, retaliation, conspiracy, and hostile work environment claims pursuant to Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") against Morgan Stanley, Chu, Michalak, Turnbull, Ashmann, and Darst;

(XIII) a breach of express contract claim against Morgan Stanley;

(XIV) a promissory estoppel and detrimental reliance claim against Morgan Stanley, Chu, and Ronald Bultman;

(XV) a breach of implied contract and unjust enrichment claim against Bultman; and

(XVI) an intentional infliction of emotional distress claim against Morgan

---

[1] In the March 24, 2009 opinion and order, the Court dismissed the following: (1) Plaintiff's racial steering, racial redlining, and differential treatment claim against all defendants pursuant to 42 U.S.C. § 1981 (Count VII); (2) Plaintiff's breach of implied contract claim against Morgan Stanley, Joseph Michalak, Joseph Girardin, and Sam Flam (Count XV); and (3) Plaintiff's race discrimination, retaliation, and hostile work environment claims pursuant to § 1981 against Girardin, Flam, Kathleen Fitzgerald, and Ronald Bultman (Counts IV-VI).

Stanley, Chu, Michalak, Turnbull, Ashmann, and Joseph Girardin.

On July 30, 2010, Morgan Stanley and the Individual Defendants filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 with respect to these remaining claims. (Docs. 63 and 64, respectively.)

According to Defendants, they served Plaintiff with a copy of their motions via overnight delivery on July 30, 2010. This Court sent a notice to the parties on the same date, indicating that the motions for summary judgment had been filed and reminding them of the provisions of Local Rule 7.1, specifically subsection (e) which provides that "[a] response to a dispositive motion must be filed within 21 days after service of the motion." E.D. Mich. LR 7.1(e). Nevertheless, Plaintiff has not responded to Defendants' motions. On October 7, 2010, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to Defendants' motions pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.    Standard for Summary Judgment

Summary judgment pursuant to Rule 56 is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery

and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II. Factual Background

Plaintiff, an African American woman, was employed as a Financial Advisor Trainee and then a Financial Advisor ("FA") at Morgan Stanley's Livonia, Michigan branch office from March 29, 2004 until August 4, 2008. Michael Chu was the Livonia branch manager when Plaintiff was hired and he remained in that position through approximately December 2004. Chu and the Livonia Branch Sales Manager, William Connell, interviewed Plaintiff prior to her hire.

4

When she began working at Morgan Stanley, Chu paired Plaintiff with Bultman, an FA, as part of an informal mentor program.  In Fall 2004, Plaintiff worked with Bultman to develop business with Michigan school districts.  By late 2004, Plaintiff and Bultman stopped working together.  Plaintiff once complained to Chu that she believed Bultman was contacting schools directly without including Plaintiff.  Chu told Plaintiff to talk with Bultman about it.  Chu's tenure as Livonia branch manager ended in December 2004.  At that time, Michalak took over the position.

Michalak served as the Livonia branch manager until May 2006.  During Michalak's tenure as branch manager, Plaintiff met with him twice to complain about work-related issues; however, Plaintiff never suggested that these complaints related to her race.  During their first meeting, Plaintiff stated that she was being "harassed" and that the office presented a "very hostile work environment," but she would not provide details or identify who allegedly engaged in misconduct. The second meeting followed a co-workers report of a verbal dispute between Plaintiff and another employee.  Plaintiff described the incident as an example of harassment by her co-workers, although she did not suggest that race was a factor.  When Michalak's tenure as branch manager ended in May 2006, he was replaced by Turnbull.

Shortly after Turnbull became the Livonia branch manager, he met with Plaintiff to review her employment history and other matters.  During this meeting, Plaintiff referred to "something else that was too deep and close to her heart," and she mentioned a sex discrimination lawsuit filed against Morgan Stanley.  Plaintiff, however, declined

Turnbull's request to share any additional concerns she might have.  Turnbull met with Plaintiff several additional times during Fall 2006 to discuss various items, including Plaintiff's business plan.  Plaintiff and Turnbull describe these meetings as positive in nature.

On October 4, 2006, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging class claims of sex discrimination and individual claims of race discrimination.  She subsequently became the named plaintiff in a pending purported nationwide gender class action lawsuit against Morgan Stanley, in which she also asserted individual race claims.  *Jaffe v. Morgan Stanley & Co.*, Case No. 3:06-cv-3903 (N.D. Cal.) ("*Jaffe* Lawsuit").[2]  On November 2, 2006, Plaintiff supplemented her EEOC charge claiming discrimination on the basis of sex and race by adding an age discrimination claim.

On March 9, 2007, Plaintiff sent an email to Turnbull with the subject line "Office Environment-Harassment/Intimidation."  Turnbull spoke to Plaintiff immediately and subsequently referred the matter to Morgan Stanley's human resources department.  In response, Fred Strobel, Morgan Stanley's Executive Director of Human Resources,

---

[2]Defendants indicate that the *Jaffe* Lawsuit did not proceed as a sex discrimination class action because a separate class action was close to being settled when the *Jaffe* Lawsuit was filed.  *Augst-Johnson, et al. v. Morgan Stanley & Co.*, No. 1:06-cv-01142 (D.D.C.) ("*Augst-Johnson* Lawsuit").  The settlement in the *Augst-Johnson* Lawsuit was approved on October 26, 2007.  On August 19, 2008, in exchange for her release of all sex discrimination claims she could have brought against Morgan Stanley arising out of her employment or termination, Plaintiff received compensation as a member of the *Augst-Johnson* Lawsuit class.

initiated an investigation.

As part of his investigation, Strobel met with Plaintiff to review in detail the nature of her complaints and concerns.[3] Strobel also reviewed Morgan Stanley's anti-harassment and non-retaliation policy with Plaintiff and told her that she should immediately contact him if she had any further complaints or concerns. On April 13, 2007, Plaintiff gave Strobel notes documenting her concerns. Plaintiff complained that another FA, Ashmann, referred to Jews as the "chosen one(s)"; referred to excluding customers with a zip code "482;" told Michalak that Plaintiff would be out of business within a year; ignored her at meetings when passing out plates and utensils, removed the paper tray while she was at the printer; stated "they're stupid, niggers are stupid"; and once called former Detroit mayor Kwame Kilpatrick "a bumbling idiot." Plaintiff also complained that co-workers Ron Rostker and Aimee Kowalewski had not been supporting her. In addition to meeting with Plaintiff, Strobel met with other Livonia branch employees, all of whom denied or could not corroborate Plaintiff's allegations.

In August 2007, the parties to the *Jaffe* Lawsuit reached a settlement in principle. By October 2007, Plaintiff had made the decision to opt out of the *Jaffe* Lawsuit and file her own lawsuit and Morgan Stanley was made aware of this fact.

From early Fall 2007 until December 2007, Plaintiff reported to the office only one or two days per week. She stopped reporting to the office altogether on December 17,

---

[3]Attorneys for Plaintiff and Morgan Stanley were present by telephone during Plaintiff's meeting with Strobel.

2007. Plaintiff claims she was working from home during this time, although she could not process client transactions without being in the office.

Beginning in March 2008, Morgan Stanley initiated an ongoing series of communications with Plaintiff, seeking her return to work. Morgan Stanley offered Plaintiff the option of returning to the Livonia office or transferring to another branch office. Priya Trauber, a member of Morgan Stanley's diversity group, unsuccessfully attempted to schedule meetings with Plaintiff to discuss Plaintiff's concerns relating to her employment. Eventually Morgan Stanley informed Plaintiff that she needed to return to work by August 4, 2008, or would be considered as a voluntary quit. When Plaintiff still had not returned to work on that date, Morgan Stanley processed her resignation. In the interim, On June 6, 2008, Plaintiff filed her complaint in this case.

### III. Applicable Law and Analysis

#### A. Race Discrimination, Retaliation and Hostile Work Environment Claims Under Title VII, § 1981, and ELCRA

Morgan Stanley seeks summary judgment with respect to Plaintiff's race discrimination and retaliation claims, arguing that Plaintiff lacks evidence to show that she was subject to an adverse employment action or treated differently than similarly situated employees on account of her race or in retaliation for any protected activity. Morgan Stanley indicates that the only possible adverse employment action that Plaintiff suffered was when it considered her as having resigned effective August 4, 2008, after she failed to report to work after December 17, 2007.

In response to Defendants' motions, Plaintiff has not come forward with facts to create a genuine issue as to whether employees outside her protected class who also refused to work for almost eight months did not lose their jobs. Similarly, she fails to present evidence to suggest that she suffered any adverse employment action other than her separation from Morgan Stanley. Morgan Stanley therefore is entitled to summary judgment with respect to Plaintiff's race discrimination and retaliation claims. For the same reasons, the Court concludes that the Individual Defendants are entitled to summary judgment with respect to these claims.[4]

With respect to Plaintiff's hostile work environment claims, Morgan Stanley contends that Plaintiff fails to establish conduct sufficient to demonstrate that she was subjected to a racially hostile work environment. Specifically, Morgan Stanley argues that Plaintiff fails to prove that she was subjected to unwelcome harassment based on her race that was sufficient to create a hostile or abusive working environment. This Court agrees.

The only specific instances of harassment that Plaintiff complained about or

---

[4]The Individual Defendants argue that Plaintiff has not established their liability for any racially discriminatory conduct or retaliation because she has presented no evidence to identify their direct participation in the alleged racially discriminatory or retaliatory conduct, gross negligence in the supervision of subordinates who committed a violation, or failure to act upon being informed that a violation was occurring. *See Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004). They are correct. Additionally, as to Plaintiff's retaliation claims against Chu and Michalak, these individuals were no longer employed by Morgan Stanley when Plaintiff engaged in any protected activity.

9

identified during discovery in this case for which there is evidence that the conduct was arguably based on Plaintiff's race related to Ashmann. As set forth in the factual background section, this conduct consisted of Ashman referring to Jews as the "chosen one(s)"; referring to excluding customers in zip code "482"; telling Michalak that Plaintiff would be out of business within a year; ignoring Plaintiff at meetings when passing out plates and utensils; removing the paper tray from her printer; saying "they're stupid, niggers are stupid," and calling former Detroit mayor Kwame Kilpatrick "a bumbling idiot." This conduct is insufficient as a matter of law to establish that Plaintiff was subjected to a racially hostile work environment.

For the same reason, the Individual Defendants are entitled to summary judgment with respect to Plaintiff's hostile work environment claims. In addition, Plaintiff fails to identify any direct participation by anyone but Ashmann in the acts contributing to her alleged hostile work environment. Therefore, to prevail on her hostile work environment claims against the Individual Defendants, Plaintiff must offer evidence of gross negligence or failure to act in response to information that a violation was occurring. *See Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004). No such evidence has been presented.

In short, Defendants are entitled to summary judgment with respect to Plaintiff's race discrimination, retaliation, and hostile work environment claims pursuant to Title VII (Counts I-III), § 1981 (Counts IV-VI), and ELCRA (Counts IX, X and XII).

### B. Conspiracy Under § 1985 and ELCRA

To establish a claim of conspiracy under § 1985, Plaintiff must prove the following: (1) a conspiracy involving two or more persons (2) for the purpose of depriving her, directly or indirectly, of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to Plaintiff or her property, or a deprivation of her rights or privileges as a United States citizen. *See Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). The first element requires proof of a "meeting of the minds" between two or more defendants. *See Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008). Plaintiff must demonstrate similar elements to prove her conspiracy claim under ELCRA. *See Pineau v. Comau Pico*, No. 03-74708, 2006 WL 846750, at *7 (E.D. Mich. 2006).

Morgan Stanley and the Individual Defendants contend that Plaintiff lacks evidence to demonstrate that any of them acted together (i.e. conspired) to "alter the terms and conditions of [her] employment . . ." or "to deny her the equal protection of the laws," as alleged in her amended complaint. (Pl.'s Am. Compl. ¶¶ 130-131.) Morgan Stanley also argues that it cannot be held liable for conspiracy based on the intra-corporate conspiracy doctrine. Plaintiff fails to counter Defendants' arguments and, based on those arguments, this Court finds that Morgan Stanley and the Individual Defendants are entitled to summary judgment with respect to Plaintiff's conspiracy claims (Counts VIII and XI).

### C. Breach of Express Contract Claim (XIII)

To prevail on a claim for breach of contract under Michigan law, Plaintiff must

establish: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and 4) the breach caused the other party injury. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). In support of her breach of contract claim, Plaintiff alleges in her amended complaint:

> 168. Morgan Stanley entered into certain oral and written contracts with Plaintiff, whose terms are set forth in written instruments, oral promises, practices of customary conduct, employee handbooks, and Firm policies, among other things. These contracts governed and created obligations to Plaintiff and other employees regarding leads, referrals, account distributions, training, business conduct, anti-discrimination, equal employment opportunities, and other aspects of Plaintiff's employment.
>
> 169. These contracts required Morgan Stanley's compliance with their terms and with federal and state civil rights laws.

Company policies and procedures "'may become an enforceable part of an employment relationship . . .'" *Dolan v. Cont'l AirLines/Cont'l Express*, 454 Mich. 373, 384, 563 N.W.2d 23 (1997) (quoting *Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 117-18, 507 N.W.2d 591 (1993)). However, this occurs "only when the circumstances (e.g., the language in the handbook itself, or an employer's oral statements or conduct) clearly and unambiguously indicate that the parties so intended.'" *Id.* at 386, 563 N.W.2d at 29 (quoting *Rood*, 444 Mich. at 137, 507 N.W.2d 591).

As Morgan Stanley argues, Plaintiff has not offered any evidence of an express contract between herself and the company. Further, she has set forth no circumstances to "clearly and unambiguously indicate" that the parties intended Morgan Stanley's policies

and procedures to become an enforceable part of the employment relationship. To the contrary, Plaintiff acknowledged during her deposition in this case that company documents expressly reserved Morgan Stanley's right to change its rules, regulations, and policies at any time and stated that there is no intent to create an express or implied employment contract. (Defs.' Jt. Ex. 2 at 71-75.)

Morgan Stanley therefore is entitled to summary judgment with respect to Plaintiff's breach of express contract claim.

### D. Promissory Estoppel/Detrimental Reliance Claim (Count XIV) and Breach of Implied Contract and Unjust Enrichment Claim (Count XV)

Plaintiff's claim for promissory estoppel or detrimental reliance against Morgan Stanley, Chu, and Bultman survived Defendants' motion to dismiss, as did her breach of implied contract and unjust enrichment claim against Bultman. To prove her promissory estoppel or detrimental reliance claim, Plaintiff must show: "(1) . . . a promise (2) that the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee (3) which in fact produces reliance or forbearance of that nature and (4) under circumstances such that the promise must be enforced if injustice is to be avoided." *Barber v SMH, Inc.*, 202 Mich. App. 366, 376, 509 N.W.2d 791, 797 (1993) (citing *Martin v. East Lansing Sch. Dist.*, 193 Mich. App. 166, 178, 483 N.W.2d 656 (1992)). To prove her implied contract/unjust enrichment claim, Plaintiff must present evidence of the following: "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the

13

benefit by the defendant." *Barber*, 202 Mich. App. at 375, 509 N.W.2d at 796.

Plaintiff's promissory estoppel and detrimental reliance claim against Morgan Stanley is premised entirely on the actions of Chu and Bultman. Chu and Bultman argue that this claim, as well as Plaintiff's breach of implied contract/unjust enrichment claim, fail because the undisputed facts do not establish an enforceable promise or that anyone benefitted from the events Plaintiff describes. In fact during her deposition in this case, Plaintiff failed to identify a single specific statement or representation made to her by Chu or Bultman, failed to explain how she relied on any statements purportedly made by them, and conceded that she has no factual support for her belief that someone else obtained business income she believes should have accrued to her. (Defs.' Jt. Ex. 2 at 102, 107, 110, 117, 124; *see also* Bultman Decl. ¶¶ 6-7.)

Defendants therefore are entitled to summary judgment with respect to Plaintiff's promissory estoppel/detrimental reliance (Count XIV) and implied contract/unjust enrichment (Count XV) claims.

### E. Intentional Infliction of Emotional Distress Claim (Count XVI)

Plaintiff asserts a claim of intentional infliction of emotional distress against Morgan Stanley, Turnbull, Chu, Girardin, Michalak, and Ashmann. To prove her claim, Plaintiff must present evidence of the following: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905, 908 (1985). "[U]nder Michigan law, the tort of intentional infliction of emotional distress is reserved for conduct that is

'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Humenny v. Gennex Corp.*, 390 F.3d 901, 908 (6th Cir. 2004) (quoting *Graham v. Ford*, 237 Mich. App. 670, 604 N.W.2d 713, 716 (1999)).

As Defendants argue in their motions for summary judgment, Plaintiff fails to identify conduct satisfying this standard. Accordingly, they are entitled to summary judgment with respect to Plaintiff's intentional infliction of emotional distress claim (Count XVI).

## IV. Conclusion

For the reasons set forth above, the Court concludes that Defendants are entitled to summary judgment with respect to Plaintiff's remaining claims.

Accordingly,

**IT IS ORDERED**, that the Individual Defendants' motion for summary judgment is **GRANTED**;

**IT IS FURTHER ORDERED**, that Morgan Stanley's motion for summary judgment is **GRANTED**.

s/PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:
Denise Williams
4504 Sheridan
Detroit, MI 48214

Mark S. Dichter, Esq.
Barry A. Hartstein, Esq.
Andrew Scroggins, Esq.
Cameron J. Evans, Esq.

Tara E. Mahoney, Esq.